Good morning, your honors. May it please the court, I'm attorney Nora Milner, and I'm representing the petitioner, Mr. Ledezma-Cosino, in this case. Several days ago, this court asked us to focus on three key issues, which I would like to address today in the order in which the court has asked us to review them. The first one is whether chronic alcoholism is a medical condition. Our answer is absolutely yes. The official position of the National Institute on Alcohol and Alcoholism has stated that, quote, alcoholism is a disease. The craving that an alcoholic feels for alcohol can be as strong as the need for food or water. An alcoholic will And in 1956, the American Medical Association designated alcoholism as a disease. But interestingly, as far back as 1745, an individual named Benjamin Rush, who was a signatory to the Declaration of Independence, he was a physician. He was the first one to actually indicate that, in his opinion, alcoholism is an addiction. It had fortunately, many began to take a much more enlightened view of the issue of alcoholism. And between 1980 and 1991, the medical organizations, including the AMA, worked together to establish policies that their position is that alcoholism is actually a disease. So the disease theory was developed and endorsed, and the AMA indicated that it are diseases, and that their treatment is a legitimate part of the medical procedure. Let me ask you one question. Yes, Your Honor. If that became an issue, whether it were a medical condition, is that something that could be decided as a matter of law, or would it require a determination by a fact finder? I believe that fact finding could certainly establish that, Your Honor. But as a matter of law, the individuals most able to deal with that issue are the individuals in the medical community. It really is a disease that has been recognized and established for treatment. Therefore, it can be handled as a matter of law. You identified drug addiction, for example, as being identified as a medical condition, yet we treat that as part of our criminal laws. You would do, Your Honor, as long as the drug addiction is considered illegal. In fact, counsel for the respondent presented two days ago a reference to a statutory review by Congress in 1981 overruling adultery and personal use of marijuana as violations of privacy, and supposedly now because habitual drunkard was not struck from the record, therefore they were endorsing it. The reality is that we have a system in our government, in our present federal system, to deal with the medical condition. The State Department, which admits individuals from abroad, these are aliens who are petitioning to come to the United States, through the Foreign Affairs Manual in Section 9FAM 40.11, we have a procedure whereby the State Department states that alcohol dependence, once determined, is considered a medical condition, and those individuals are referred to a panel physician. Those individuals who are doctors then can do an evaluation, determine whether that individual needs to go into therapy, perhaps rehabilitation, and that is handled around the world through all of our State Department embassies and consulates. So we have a procedure where we admit foreigners to the United States and treat that as a medical condition, and yet in this country we're establishing and putting a morality label on it. Why are they mutually exclusive? They should not be, Your Honor. The Board dismissed the Foreign Affairs Manual as, quote, irrelevant. The Board would not take that into consideration. My question is, why is it not possible that something speaks to good moral character, even though the underlying etymology may be connected to something we now call a medical condition or a disease? The reality is, Your Honor, that that would lead into the second issue. Should a denial of good moral character be based on a medical condition? And our position is absolutely not. Well, the question isn't really quite should, but is a matter of law. Is there a basis for us to, in effect, disregard or read that provision out of the statute because we think it's medically based? We believe that the position of petitioner is that attaching a morality issue to a medical condition is just as unsustainable as if you were attaching a morality label to an individual who has AIDS or cancer or even syphilis. Or drug addiction. Or even drug addiction. But we do attach criminal consequences to drug addiction. We do, Your Honor, when there are criminal consequences. But in this petitioner's case, he had one DUI, which does not make him deportable. He had no other criminal acts. Even in our society today, as this Court is well aware, we are decriminalizing marijuana in many, many states. And Congress did with respect to the immigration statute. Exactly. But Congress elected not to decriminalize or to take habitual drunkard out of this provision. And, Your Honor, we believe that that's wrong. It may be wrong. We believe that that is a vague and overbroad position that Congress needs to readdress. Okay, I understand that as a belief. Give me a legal basis for telling Congress it can't do that. Well, the legal basis would be several, Your Honor. Number one, whenever there's a vague or overbroad statute that Congress has enacted, the Court has the ability and, in fact, is charged with determining whether that individual has been properly given notice to be able to understand that his actions are subject to criminal consequences. Have you looked up the term drunkard or habitual drunkard? Well, interestingly enough, Your Honor, there are very, very few precedents and very few discussions about it in the law. The question of habitual drunkard, frankly, the term habitual drunkard comes from probably a hundred years ago when this country was processing thousands of individuals from abroad to Ellis Island. And at that time, many labels were attached to individuals, drunkenness, aberrant behavior, mental sociopath, even homosexuality. Those individuals were attached labels and returned to their countries, many, many without any process of being admitted to the United States. Several years ago, Your Honor, this country was faced with the AIDS epidemic. The question I pose is whether you had looked up the term. I haven't heard an answer to that question yet. Actually, Your Honor, and frankly, frankly, the term habitual drunkard states generally that it is an addiction to alcohol and that it is an individual who drinks, quote, excessively. But there is no definition. Doesn't that apply to your client? Well, Black's Law Dictionary actually has a definition. Yes. And all the definitions I've found seem to cover your client. Actually, Your Honor, my client is an alcoholic. The question before this Court is whether my client's an alcoholic. No, no. The question you just posed is one of vagueness. But if there's no doubt that your client fits within the definition, how does vagueness matter? Well, vagueness matters because one is excessive. Does that mean that an individual has five martinis? If vagueness is applied to your client, it's not vague if it's clear that he meets the definition. You may have a different argument because you've alleged due process and equal protection as a part of due process. You may have an argument on equal protection that it's not rational to classify this group differently on the basis of morality based on their condition. But I must say I don't see how it's vague as applied to your client because there's no doubt that he meets the definition. That's what Judge Clifton was pointing out, that you look in the dictionary and take your definition and he would meet the definition. It's not vague. He meets the definition. It may be an improper thing to do to classify somebody with a medical condition as immoral on the basis of that condition. That's a different question. It may also be a different issue from whether you could deport somebody because of a medical condition. If Congress wrote a law that said we don't want any people with AIDS or any other illness in this country and we're not going to let them in, that would raise a different constitutional question. The question here is, is there something unconstitutional about classifying a medical condition as immoral? Congress in that section was attempting to exclude or deport people who were immoral. The question here is, is it a violation of the due process clause which you talked about through the equal protection clause to classify a group as being immoral because they have a medical condition? If I were you, I would address my argument to that rather than to saying it's vague because I don't see how, as Judge Clifton pointed out, you can look in the dictionary and see that he qualifies as a habitual drunkard. Your Honor, I agree with the court. I understand the position and the position of petitioner is that, which is the second issue that this court asked us to address, is whether a denial of good moral character should be based on this condition. Several years ago, 20 some odd years ago, this country was faced, as was much of the world, with a huge epidemic of AIDS. At that time, sadly, many in this society attached a moral label to AIDS, that it was a punishment to gay men for aberrant behavior. Fortunately today, in our society, we understand that AIDS cuts across all lines, all socioeconomic groups, and anyone can be struck with AIDS, and we no longer attach a morality label to it. The fact is, alcoholism is a disease. It is a recognized disease by all of the medical organizations in the world. It's treated as such, and we need to take the morality label off of it. We need to process individuals through a medical procedure, just as we would do if they were applying for admission through the United States State Department. If our State Department officers are instructed by the Foreign Affairs Manual to treat that as a medical condition, and the individual is applying to become a permanent resident in this country, we should be applying the same standards in the United States. Attaching a morality label is simply unacceptable in this enlightened society. But we need a legal basis. I mean, you're making great arguments to try to tell Congress to change the law. What's the legal basis for us to conclude that your client should be eligible for cancellation? The legal basis, Your Honor, is that, as this Court stated in Gutierrez v. Holder, in order to have standing to challenge the habitual drunkard language in the statute, he has to show that he was ordered deported under this provision. And, in fact, he was. He was ordered deported from this country. I'm not asking about standing, though. I mean, I'm really trying to focus. Judge Reinhart has kind of pointed a direction for you, and I need some legal support to go down that path. The Equal Protection Clause really would apply as well, in that we are treating individuals coming from abroad in one standard and treating individuals in the United States with a different one. We're attaching a morality label to individuals who reside here and, in many cases, have resided here for 20 or 30 years and treating them in a different way. In a morality view, attaching it is a sin or a vice, whereas we lose the ability to treat them under medical conditions. In the State Department procedures, we have a more balanced and reasonable approach. It's a violation of my client's due process rights because, number one, he doesn't know in his mind whether what he has done in his mind is an excessive form of behavior which is a danger to the community. In fact, he drinks alone. He has only one DUI, which is many years old. He has never committed any acts which present a danger other than, sadly to himself. You have about a minute and a half to rebuttal, if you want to say. Thank you, Your Honor. I will reserve. Thank you. May it please the Court, Lisa Damiano on behalf of the Attorney General. Good morning to you all. The primary issue in this case is whether substantial evidence supports the agency's dispositive determination that petitioner is statutorily ineligible for cancellation of removal relief. That may or may not be. I think that under the statute, it meets the statutory definition. I don't think it's likely to be concluded that the statute is too vague, but it meets it. The question, I think, is more likely if there's a question, is the classification of chronic alcoholism as an immoral act, is that an unconstitutional classification? As Judge Clifton said, it's still in the statute, and it's there, and it meets the statutory definition. If that's the principal issue, I think you're going to win. Your Honor, the government recognizes that alcoholism is a medical condition. Even though the agency did not make a finding, we recognize that it's a medical condition. However, Congress saw fit in the exercise of its plenary power to say that a habitual drunkard lacks good moral character. That's the question. That, I think, is what you should address, that it is a medical condition. Congress classified it as immoral. Does that violate the Equal Protection Clause? If you won't find a lot of help from Justice Kennedy's latest discussion of the Equal Protection Clause, but there are lots of things. If it's a totally irrational classification, then it violates the Equal Protection Clause, maybe. Do you think it survives an Equal Protection Clause challenge, not to say you would deport him, but to say that that is immoral to have that medical condition? Well, there's several things there to be addressed. First, neither of the parties raised the Equal Protection issue. They raised due process, and the BIA can't decide that issue, and they told them they can't decide the constitutional question. It hasn't been briefed. However, on the due process issue, we argued in our brief that there is no liberty or protected interest in discretionary relief from removal. That was when we were addressing the Void for Vagueness Doctrine. You know, this Court has said that there is no liberty or protected interest in discretionary relief from removal. So the due process clause is not implicated in a cancellation of removal case. Well, but this — it wasn't denied in the exercise of discretion. It was — he was deemed ineligible for what would be discretionary relief. And we wind up reviewing eligibility for cancellation of removal on a pretty recurring basis. So it can't be that we can't entertain it just because there's an ultimate discretionary element. Well, on the due process issue, we would argue that it's because it's a discretionary form of relief. We get those, too. IAC and effective assistance of counsel cases, for example, wind up coming to us via due process because the Sixth Amendment doesn't apply, and we wind up entertaining arguments. There's a limitation, for sure. Substantive due process arguments can't get any traction. But I'm not sure that it's so clear that all due process arguments are off the table. Well, going back to the Court's original question about whether the denial of good moral character might be based on a medical condition, first we'd say that the statute says that it's a habitual drunkard that lacks good moral character, not a chronic alcoholic. Now, we've discussed that in this case one of the reasons the agency found him to be a habitual drunkard was the fact that he was diagnosed as an alcoholic. But even though we believe a chronic alcoholism diagnosis would be enough to show that someone is a habitual drunkard, in this case we had overwhelming evidence in addition to the fact that he's a chronic alcoholic. We had his own testimony that he drank excessively. But doesn't a chronic alcoholic drink excessively? Yes, but, Your Honor, what I'm trying to say is that the agency isn't basing the decision solely on the fact that he was diagnosed with a medical condition. They're basing it on his two DUI arrests. And, in fact, even though the record does not clearly show he was convicted twice of DUI, he admitted under oath that he went before a judge on that other arrest and he pled to the charge. He wasn't deported because of, you know, it could be that being convicted, that they'd been convicted ten times. You could deport him for that reason. But that's not the reason that was chosen. The reason was that he was immoral. Right, and the good moral character finding was based on all of the facts in the case. The evidence, the board actually lists out the DUI arrests, the testimony of the daughter saying that her father drank excessively, petitioner's testimony that he drank excessively, plus the medical documentation showing a long history of alcohol abuse spanning ten years, and the diagnosis of alcoholism. All of those things, all of those facts went into the fact finder's decision to find that this man was a habitual drunkard and thus barred under that good moral character prong. Are you saying being a habitual drunkard is not a medical condition whereas being an alcoholic, chronic alcoholic is? Yes, being a chronic alcoholic is a medical diagnosis and that's one of many facts that was determined, was put into this balancing of facts to determine that this man was a habitual drunkard. The statute uses the term habitual drunkard. So does it mean the agency can see that the definition of a habitual drunkard isn't what it offers in its brief, that it's someone who drinks excessively? Yes, I would say that Respondent's Brief quotes Black's Law Dictionary and we would argue that that is an acceptable definition of habitual drunkard. What I'm saying is that in this case the agency took lots of factors into consideration in making the determination that he was a habitual drunkard, not just that he was an alcoholic but that he had the two DUI arrests, that his daughter testified about his excessive abuse of alcohol. He testified. And I thought that in your brief Respondent cited to some district court cases where the courts found that having two DUI convictions wasn't enough to conclude that an individual was a habitual drunkard. So certainly there's more than just DUI convictions. It seems like what you're saying is the definition requires more than just someone who drinks excessively. Well, I would say that in this case the agency looked at all sorts of pieces of evidence to determine that he did drink excessively, that he did have DUI arrests and at least one conviction, that he did have a diagnosis of alcoholism in addition to the acute alcoholic hepatitis, the admitted long history of alcohol abuse spanning ten years. What I'm just saying is that it wasn't just the diagnosis of a medical condition that found he was immoral on that basis. But that's all a result of his medical condition. His hepatitis, his liver condition, that's all a result of his alcoholism. Yes, it is all a result of his alcoholism, his excessive alcohol abuse, his long history of drinking one liter of tequila per day, as the record indicates. All of that came into play. And just to take a step back, habitual drunkard may seem like a very arcane term, but actually the habitual drunkard term came into the statute in 1952. Prior to 1952, there was a provision excluding chronic alcoholics from admission. There was no good moral character definition in the Immigration Act of 1917, but that Immigration Act excluded immigrants based on chronic alcoholism and also referred to it as a disease, if you look at that statute. And that's one of my concerns, is that the definition that's offered by the respondent here seems divorced from the context of the statute, because when you look at the other enumerated categories of individuals who are excluded from having good moral character, all the other categories focus on the bad acts, not on a person's condition. For example, I think one of the categories is that an individual whose income is derived principally from illegal gaming activities and not someone addicted to gambling. But here, so the definition of a habitual drunkard that's offered by the agency doesn't seem to comport in the context of the statute. Well, again, it is the province of Congress to decide who lacks good moral character for this discretionary rule. But isn't it this court's duty to construe what that term means? The habitual drunkard? Well, it's the duty of this court to determine whether substantial evidence supports the agency's finding that this person is not eligible for cancellation of removal. It's whether or not the record compels the conclusion that this person was eligible I'm sorry, was not eligible for cancellation of removal. So we're not here to determine what is the definition. We're here to determine, does this record compel a contrary conclusion? And as your honors have said, this guy... But isn't the starting point in that process, the court has to determine what the definition is to determine whether or not substantial evidence supports the conclusion? Well, yes, the court has to know what the term means in order to determine if evidence compels a contrary conclusion. And we've offered the definition found in Black's Law Dictionary. But nothing precludes Congress from including habitual drunkards or even alcoholics in the per se categories found in 8 U.S.C. 1101F. So what is the government's interest in excluding habitual drunkards from having good moral character? Well, I wasn't able to find any legislative history on that. I would be speculating. However, the good moral character categories of exclusion come out of Congress's attempts to protect society. They're looking at barring people who have a negative impact on themselves and others. So the illegal gaming, the... No, there is a difference. I don't want to interrupt the line of questioning. But we're not faced with a statute that says we are not going to admit habitual drunkards or we're not going to admit people with tuberculosis. Nor do we want to burden society with people with cancer. So we've got enough cancer victims here. We don't want more. That would be a different issue. The issue is whether it is rational to classify as without good moral character someone who has cancer or tuberculosis or suffers from another medical condition of chronic alcoholism. It's a different issue. And I'm not sure the answer would be the same if Congress had just said, here are the categories of people we want to bar. We don't care whether they have good moral character. We don't care why they got cancer. We've got enough medical problems in this country. That's not what the statute says. The statute says we want to bar people who have bad moral characters. Right. I just read the IJ's decision and the BIA's opinion again. And I think it's clearer beyond any question. They were not barring him because he had been arrested, because his daughter said he drank a lot, or anything else. The whole basis of the decision is that under the law, he is ineligible because he has a medical condition and that qualifies him as somebody with a bad moral character. I think that's the issue. Is that an unlawful, unconstitutional categorization? Well, no, Your Honor. As I said, Congress has plenary power over these matters. Habitual drunkards are not a constitutionally protected group of individuals. And the board's decision does cite to the daughter's testimony and the two arrests for DUI. To show that he's a habitual drunkard. Exactly. And Congress has the authority to decide who lacks good moral character. It is Congress's authority to do so, and it has done so here. Could they say every third person who comes has bad moral character? Yes, they could. Whether that would be constitutional is another question. But if this court wants to know whether there was a rational basis, I would say that that hasn't been briefed, and we would ask that we have the opportunity to brief that equal protection issue. But in the context of what's been raised in this case, Congress had the authority to determine what groups of people are precluded from establishing good moral character. And also, the reason that they chose these groups of people is because, even though habitual drunkards could be also alcoholics or have a medical condition, there is a concern that people with that condition or people that are habitual drunkards have a negative effect on society. All the groups of people precluded from showing good moral character were chosen because they were thought to have some sort of a negative effect on society, and that's why they were chosen and why habitual drunkards are in that provision. Thank you. I see I'm almost out of time. Thank you very much. Your Honor, just briefly in closing, I will address the issue of equal protection because I believe that the court has lasered exactly where we need to be on this case. The reality is that it is a violation of equal protection for my client to be judged as an immoral or sinful individual because he has a medical condition, whereas if he came before that same immigration court and he had cancer or diabetes or leukemia. Does cancer or diabetes have any element of free will? They do not, Your Honor. Does alcoholism have any element of free will? It does not, Your Honor. It does not. The Medical Association has indicated that alcoholism can be inherited as a predisposition. It is not something that someone does involuntarily. Is it established as a matter of law that there is no element of free will involved in the consumption of alcohol? Your Honor, I don't believe that the courts have been able to determine that. I believe that that goes down to the same issue as whether someone can say— Is it established as a matter of scientific fact that there is no free will as any part of consumption of alcohol? Alcoholism is, in fact, generally considered a disease— That's not the question I asked. —and it generally does not include free will, Your Honor. It does not. So we would therefore ask the court to look at this in the vein of a violation of equal protection. Thank you. And grant the petition. Thank you, counsel. Thank you both very much. The case just argued will be submitted.
judges: Du, Reinhardt, Clifton